**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**


| | | |
|---|---|---|
| **ROY EDWARD SMITH #1873319** | § | |
| | § | |
| **V.** | § | **W-20-CA-263-ADA** |
| | § | |
| **BOBBY LUMPKIN** | § | |


## ORDER

Before the Court are Plaintiff's Complaint (#1), Plaintiff's supplements (#6, 13), Plaintiff's more definite statement (#9), Defendant's Motion to Dismiss which the Court converted to a motion for summary judgment (#19), Defendant's Amended Motion for Summary Judgment (#24), and Plaintiff's Responses (#22, 23, 25). Plaintiff is proceeding pro se and in forma pauperis.

### STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice—Correctional Institutions Division. Plaintiff asserted that Defendant violated his First Amendment rights based on the newly implemented regulations of inmate mail. Plaintiff filed suit against Lorie Davis in her official capacity as director of TDCJ's Correctional Institutions Division, but Bobby Lumpkin has since been substituted for Davis following Davis's retirement and Lumpkin's replacement of her as director. Plaintiff seeks injunctive relief, requiring that TDCJ find an alternative to its mail regulations that does not restrict inmate mail as significantly.

<u>DISCUSSION AND ANALYSIS</u>

A.     <u>Factual Background</u>

In March 2020, TDCJ implemented a new program entitled "Inspect 2 Protect." This program increased limits on the types of mail inmates could receive. TDCJ indicated that the program was necessary to continue their efforts to combat the introduction of contraband into Texas prisons. Plaintiff contends that the new policy is too severe because it denies inmates the ability to receive greeting cards. Plaintiff asserts that receiving greeting cards can "put smiles on some of [the inmates] faces" and that the new policy hurts inmates unnecessarily.

Plaintiff recognizes that TDCJ has an obligation to try to prevent contraband in prison. But in Plaintiff's opinion, there are other ways to uncover contraband. Plaintiff believes that technology has advanced sufficiently that TDCJ should invest in other ways to prevent contraband, rather than punishing inmates by restricting their mail. Plaintiff states that "not having the opportunity to receive greeting cards of any kind is pushing it way too far." Plaintiff admits, however, that Defendant can restrict inmate correspondence rights. Plaintiff also allows that Defendant understandably wants to limit perfume, stickers, lipstick, bodily fluids, powdery substances, and artwork containing paint, glitter, glue, or tape. However, he contends that the limits are greater than necessary and that the new policy is too harsh.

Defendant provides information on the policy and its purposes. Defendant admits that the "Inspect 2 Protect" policy limits the mail inmates can receive to only that submitted on standard white paper. Inmates may not receive mail on colored, decorated,

card stock, construction, linen, or cotton paper. Defendant provides evidence that inmates received over 7.5 million pieces of mail in 2019, and that nearly 3,500 per month contained an uninspectable or suspicious substance. Defendant also shows, as an example, a greeting card used to conceal eleven illegal sim cards.

B.    Summary Judgment Standard

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party

must produce "specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

C.     Inmate First Amendment Rights and Mail

When analyzing a prisoner's claim under the First Amendment that a regulation violates his rights, the Court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and whether the regulation is reasonably related to a legitimate penological interest. The Supreme Court has identified four factors that are relevant: (1) whether the regulation is rationally related to a legitimate penological goal; (2) whether alternative means of exercising First Amendment rights are available; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether there are easy and obvious alternative means of accommodating the asserted right. *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (internal citations omitted). "[R]ationality is the controlling factor . . . and the remaining factors are best understood as indicators of

rationality." *Id*. at 214-15 (internal citations omitted). Importantly, "regulations [that] are expressly aimed at protecting prison security . . . [are] central to all other corrections goals." *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (internal citations and quotation marks omitted). Where a regulation restricts First Amendment rights in a neutral fashion, it is more likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 Fed. Appx. 923, 931-932 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). In addition, the Fifth Circuit has long held that inmates do not possess a right to the unrestricted freedom of receipt and transmission of mail. *Adams v. Ellis*, 197 F.2d 483, 485 (5th Cir. 1952).

Here, Plaintiff admits that the regulation is rationally related to a legitimate penological goal. Indeed, he acknowledges that Defendant has the right to implement mail regulations in order to keep contraband out of prisons. As Defendant's summary judgment evidence shows, control and review of inmate mail is an important aspect of prison security. In order to meet its legitimate penological interest of prison security, "[a]ll general [offender] correspondence shall be subject to the right of inspection and rejection by mailroom staff[,]" who may inspect offender mail for several categories of illicit offender activity, including the introduction of contraband into the prison through offender mail. Def. Ex. A 010-011. Thus, the restrictions that TDCJ placed on incoming mail through its "Inspect 2 Protect" program, including prohibiting certain types of paper and substances contained on or in inmate mail, are rationally related to the legitimate penological interest of prison security.

Plaintiff also acknowledges that alternative means of exercising First Amendment rights are available. He may send and receive correspondence on plain white paper or by

electronic message, and the quantity of that correspondence is not limited by the new policy. Furthermore, inmates are entitled to receive electronic messages. The undisputed summary judgment evidence indicates that in 2019, inmates received approximately 3.5 million pages of electronic messages, including 1 million attachments.

Plaintiff asserts that the impact of the accommodation on inmates, however, is too severe. He claims that disallowing greeting cards is too restrictive. These limits are undoubtedly severe, but as Defendant's summary judgment evidence shows, contraband has been found concealed in greeting cards and on homemade cards soaked in synthetic marijuana. While the Court does not disregard Plaintiff's assertion that greeting cards may increase morale among inmates, that alone is insufficient to overcome the need for prison security. While greeting cards may make inmates happy, it is certainly possible that the same positive feelings can come from any communication and well wishes from loved ones—the use of a greeting card to convey those messages is not a constitutional right.

Finally, Plaintiff essentially argues that there must be some sort of technological way to address contraband in the prison mail system. Plaintiff fails to identify what method this might be, but he is convinced that TDCJ should invest in technology rather than limiting the receipt of greeting cards. While there may be alternative means of accommodating the asserted right, they are not easy or obvious. Even assuming there were additional ways that TDCJ could prevent the entry of contraband through the mail system, the "Inspect 2 Protect" policy does not prevent investment in those potential solutions as well.

There is no dispute of material fact that the "Inspect 2 Protect" program was implemented for the legitimate penological interest of prison security and the program's restrictions on incoming inmate mail do not rise to the level of violating Plaintiff's First Amendment rights.

CONCLUSION

It is therefore **ORDERED** that Defendant's Amended Motion for Summary Judgment (#24) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

It is finally **ORDERED** that all other pending motions are **DISMISSED**.

**SIGNED** on December 18, 2020

_____
    ALAN D ALBRIGHT
    UNITED STATES DISTRICT JUDGE